UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

DAVID M. LEPPIEN,

    Plaintiff,

v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

                                /

Case No. 1:15-CV-722

HON. ROBERT HOLMES BELL

## **OPINION**

This is a social security action brought under 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner). Plaintiff David Leppien seeks review of the Commissioner's decision denying his claim for disability insurance benefits (DIB) and supplemental security income (SSI) under Titles II and XVI of the Social Security Act.

## **STANDARD OF REVIEW**

The scope of judicial review in a social security case is limited to determining whether the Commissioner applied the proper legal standards in making her decision and whether there exists in the record substantial evidence supporting that decision. *See Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989). The Court may not conduct a *de novo* review of the case, resolve evidentiary conflicts, or decide questions of credibility. *See Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). It is the Commissioner who is charged with finding the facts relevant to an application for disability benefits, and her findings are conclusive provided they

are supported by substantial evidence. *See* 42 U.S.C. § 405(g).

Substantial evidence is more than a scintilla, but less than a preponderance. *See Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) (citations omitted). It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993). In determining the substantiality of the evidence, the Court must consider the evidence on the record as a whole and take into account whatever evidence in the record fairly detracts from its weight. *See Richardson v. Sec'y of Health & Human Servs.*, 735 F.2d 962, 963 (6th Cir. 1984). The substantial evidence standard presupposes the existence of a zone within which the decision maker can properly rule either way, without judicial interference. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). This standard affords to the administrative decision maker considerable latitude, and indicates that a decision supported by substantial evidence will not be reversed simply because the evidence would have supported a contrary decision. *See Bogle*, 998 F.2d at 347; *Mullen*, 800 F.2d at 545.

**PROCEDURAL POSTURE**

Plaintiff was 44 years of age on the date of the Administrative Law Judge's (ALJ) decision. (PageID.40, 61.) He left high school in the eleventh grade, and was previously employed as a bartender, carpenter, and tractor-trailer truck driver. (PageID.72, 88.) Plaintiff filed for SSI on September 13, 2012, and DIB on October 1, 2012, alleging that he had been disabled since July 28, 2012, due to limb damage from an accident, and arm and leg damage. (PageID.107, 115, 179–88.) Plaintiff's applications were denied on January 16, 2013, after which time he requested a hearing before an ALJ. (PageID.127–35.) On December 23, 2013, Plaintiff appeared with his counsel before

ALJ Thomas L. Walters for an administrative hearing with testimony being offered by Plaintiff, Ms. Jennifer Dibean (a friend of Plaintiff), and a vocational expert (VE). (PageID.56–93.) In a written decision dated March 6, 2014, the ALJ determined that Plaintiff was not disabled. (PageID.40–55.) On May 8, 2015, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision in the matter. (PageID.24–29.) Plaintiff subsequently initiated this action under 42 U.S.C. § 405(g).

## ALJ'S DECISION

The social security regulations articulate a five-step sequential process for evaluating disability. *See* 20 C.F.R. §§ 404.1520(a-f), 416.920(a-f).[1] If the Commissioner can make a dispositive finding at any point in the review, no further finding is required. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The regulations also provide that if a claimant suffers from a nonexertional impairment as well as an exertional impairment, both are considered in determining the claimant's residual functional capacity (RFC). *See* 20 C.F.R. §§ 404.1545, 416.945.

Plaintiff has the burden of proving the existence and severity of limitations caused

---

[1]
1. An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. § 404.1520(b));

2. An individual who does not have a "severe impairment" will not be found "disabled" (20 C.F.R. § 404.1520(c));

3. If an individual is not working and is suffering from a severe impairment which meets the duration requirement and which "meets or equals" a listed impairment in Appendix 1 of Subpart P of Regulations No. 4, a finding of "disabled" will be made without consideration of vocational factors (20 C.F.R. § 404.1520(d));

4. If an individual is capable of performing work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. § 404.1520(e));

5. If an individual's impairment is so severe as to preclude the performance of past work, other factors including age, education, past work experience, and residual functional capacity must be considered to determine if other work can be performed. (20 C.F.R. § 404.1520(f)).

3

by his impairments and that he is precluded from performing past relevant work through step four. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, it is the Commissioner's burden "to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.*

ALJ Walters determined Plaintiff's claim failed at the fifth step of the evaluation. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since his alleged onset date. (PageID.45.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) right femur fracture; (2) right tibia fracture; (3) right tibial plateau fracture; (4) right first, second, and fifth metacarpal fractures; (5) right distal radial ulnar joint fracture; and (6) left interarticular distal radius fracture. The ALJ also determined Plaintiff was obese, with a Body Mass Index of 43.9, but that Plaintiff's obesity was a non-severe impairment. (PageID.45–46.) At the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments. (PageID.46.) At the fourth step, the ALJ found that Plaintiff retained the RFC based on all the impairments:

> to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can only perform simple, routine, repetitive work that has a SVP of 1 or 2. He cannot work around moving machinery or unprotected heights; cannot walk beyond one city block and can only perform work requiring no more than occasional bending, twisting, turning, crouching, stooping, climbing, crawling, kneeling. In addition, the claimant is able to perform no more than occasional fingering with the right hand.

(PageID.46.) Continuing with the fourth step, the ALJ determined that Plaintiff was unable to perform any of his past relevant work. (PageID.49.) At the fifth step, the ALJ questioned the VE to determine whether a significant number of jobs exist in the economy which Plaintiff could perform given his limitations. *See Richardson*, 735 F.2d at 964. The VE testified that Plaintiff

could perform the following work: hand packager (15,000 jobs in the nation), material handling (30,000 jobs in the nation), and production worker (25,000 jobs in the nation). (PageID.89.) Based on this record, the ALJ found that Plaintiff was capable of making a successful adjustment to work that exists in significant numbers in the national economy. (PageID.50.)

Accordingly, the ALJ concluded that Plaintiff was not disabled at any point from July 28, 2012, through March 6, 2014. (PageID.51.)

## DISCUSSION

On September 14, 2015, the Court filed a Notice in this case regarding the filing of briefs. Among other things, the Notice stated: "Plaintiff's initial brief must contain a Statement of Errors, setting forth the specific errors of fact or law upon which Plaintiff seeks reversal or remand." (ECF No.8, PageID.467.) Although Plaintiff's brief contains such a statement, the errors do not entirely correspond with the arguments discussed later in the brief. (PageID.520.) Accordingly, the Court must frame the issues for review. The Court finds that Plaintiff has raised the following issues:

1. The ALJ erred in failing to give controlling weight to the opinion of Dr. Michael McDermott;

2. Even if the ALJ did not err in giving Dr. McDermott's opinion less than controlling weight, the ALJ failed to apply the factors listed in 20 CFR §§ 404.1527(c) and 416.927(c); and

3. The ALJ failed to properly discuss Plaintiff's obesity.

**1.   The ALJ Provided Good Reasons for Giving Dr. McDermott's Opinion Less than Controlling Weight.**

On December 20, 2013, Dr. Michael McDermott, M.D., filled out a medical questionnaire that asked his opinion of Plaintiff's physical impairments. (PageID.473–75.) Among

5

other things. Dr. McDermott opined that Plaintiff had "limited pronation / supination and flexion / extension that lead to decreased ability to use [the right] upper extremity." In addition Plaintiff had "limited [right] knee flexion [and] extension with limited ability to ambulate." Dr. McDermott stated that "both lead to decreased ability to lift, carry, push or pull as well as stand or sit or type for long periods at a time." (PageID.473.) Dr. McDermott further answered "no" to a question of whether Plaintiff was capable of performing a full time job, noting that Plaintiff "currently lacks the ability to perform either upper extremity or lower extremity tasks for that period of time due to his injuries." (PageID.474.) Dr. McDermott also noted that Plaintiff would have to take unscheduled breaks every one to two hours–totaling two hours a day. He admitted, however, that this was a guess. Dr. McDermott concluded by noting that Plaintiff would likely miss work one to two times a week. (PageID.475.) The ALJ gave "little weight" to the opinion. (PageID.49.) Plaintiff argues the ALJ failed to adequately consider the opinion under the treating physician rule. The Court disagrees.

The treating physician doctrine recognizes that medical professionals who have a long history of caring for a claimant and his maladies generally possess significant insight into his medical condition. *See Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). An ALJ must, therefore, give controlling weight to the opinion of a treating source if: (1) the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) the opinion "is not inconsistent with the other substantial evidence in the case record." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375–76 (6th Cir. 2013) (quoting 20 C.F.R. § 404.1527). It is undisputed that Dr. McDermott qualifies as a treating physician.

Such deference is appropriate, however, only where the particular opinion "is based

6

upon sufficient medical data." *Miller v. Sec'y of Health & Human Servs.*, 1991 WL 229979, at *2 (6th Cir. Nov. 7, 1991) (citing *Shavers v. Sec'y of Health & Human Servs.*, 839 F.2d 232, 235 n.1 (6th Cir. 1987)). The ALJ may reject the opinion of a treating physician where it is unsupported by the medical record, merely states a conclusion, or is contradicted by substantial medical evidence. *See Cohen*, 964 F.2d at 528; *Miller*, 1991 WL 229979 at *2 (citing *Shavers*, 839 F.2d at 235 n.1); *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286–87 (6th Cir. 1994).

If an ALJ accords less than controlling weight to a treating source's opinion, the ALJ must "give good reasons" for doing so. *Gayheart*, 710 F.3d at 376. Such reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.* This requirement "ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule." *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Simply stating that the physician's opinions "are not well-supported by any objective findings and are inconsistent with other credible evidence" is, without more, too "ambiguous" to permit meaningful review of the ALJ's assessment. *Id.* at 376–77.

After summarizing Dr. McDermott's opinion, the ALJ explained he was giving the opinion little weight because:

> [H]is findings relative to the claimant's ability to function are not consistent with the record as a whole. The record demonstrates the claimant experiences some limitations and these are provided for in the residual functional capacity (RFC) contained in this decision. Nonetheless, he retains the ability to perform work within the parameters set forth in this RFC. The claimant does not require significant pain medication and he has stated that he was even able to work as a truck driver for a time in June of 2013. (10F) In

> addition, Agency medical examiner Glen Douglass, M.D. finds following his review of the evidence in January 2013 that the claimant's condition is expected to improve and that while the claimant will not be able to perform work he has done in the past, he will be able to perform work that is less demanding. Thus, the claimant's condition is not expected to remain severe enough for 12 months in a row, to keep the claimant from working. This opinion is granted great weight in determining the claimant is not disabled.

(PageID.49.) Accordingly, the Commissioner argues the ALJ discounted the doctor's opinion for the following reasons:

1. Dr. McDermott's opinion conflicted with the record;

2. Plaintiff did not require "significant pain medication";

3. Plaintiff returned to work, for a time, as a truck driver; and

4. Dr. McDermott's opinion conflicted with Dr. Douglass' opinion.

(PageID.557–60.) The Court concludes the first and fourth reasons identified by the Commissioner do not constitute good reasons. The ALJ's statement that Dr. McDermott's opinion was inconsistent with the record as a whole is precisely the type of vague language that the *Gayheart* court concluded was insufficient to permit meaningful review. The Commissioner's attempt to rehabilitate the ALJ's reasoning on this point is precisely the type of analysis the ALJ should have undertaken in the first place. As regards the ALJ's discussion of Dr. Douglass' opinion, it does not appear, as the Commissioner argues, that the ALJ's discussion of Dr. Douglass' opinion related to his discussion of Dr. McDermott's opinion. Rather the ALJ seemed to have moved on to separately discuss Dr. Douglass' opinion. Though the two opinions may conflict, it is not clear that the ALJ used this fact as a reason to discount Dr. McDermott's opinion. Accordingly the Court does not find this to be a

"good reason" either.[2] The Court concludes, however, that the second and third reasons identified by the ALJ amount to good reasons, supported by substantial evidence, for discounting the opinion.

At the hearing, Plaintiff testified that he was initially placed on narcotic painkillers after his July 28, 2012, accident, but because of a history of addiction in his family and fears that he too would become addicted, he ceased taking those painkillers and took only over the counter medication. (PageID.78.) Plaintiff's decision in this regard is commendable, however the fact that he was nonetheless able to cope without the medications is inconsistent with Dr. McDermott's opinion. The Sixth Circuit has found that conservative treatment may constitute a "good reason" for discounting a treating physician's opinion. *See Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 631 (6th Cir. 2016) (collecting cases). The record shows that as soon as October 30, 2012, Plaintiff "generally" denied pain, and was only taking over-the-counter anti-inflammatories for occasional headaches. (PageID.345.) Treatment notes from physical therapy appointments indicate that Plaintiff would often rate his pain as a 0, 1, or 2, on a scale of 0–10. (PageID.386, 392, 394, 396, 398, 402.) Though Plaintiff would at other times report pain on a higher levels--at one time reporting an eight-- they appear to be isolated incidents. (PageID.396, 398, 400.) On November 30, 2012, Plaintiff reported his pain management was adequate with no medication. (PageID.363.) On February 15, 2013, Plaintiff reported an occasional shooting pain, but that there was "[n]othing that requires pain med[ication.]" (PageID.456.) Accordingly, substantial evidence supports the

---

[2]Even if the ALJ's discussion had more directly connected Dr. Douglass' opinion to his discussion of Dr. McDermott, the inconsistency between the two opinions would not have constituted a good reason for giving less than controlling weight to Dr. McDermott's opinion. While it is patent that an ALJ may, in appropriate circumstances, give greater credit to the opinions of medical consultants than those of a treating source, *see* SSR 96-2p, 1996 WL 374180, at *3, such is not a substitute for the "good reasons" analysis required by the treating physician rule. *See Gayheart*, 710 F.3d at 377 ("[T]he conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors. Otherwise the treating-physician rule would have no practical force because the treating source's opinion would have controlling weight only when the other sources agreed with that opinion.").

9

ALJ's conclusion that Dr. McDermott's opinion was inconsistent with Plaintiff's conservative treatment.

The ALJ also found that Dr. McDermott's opinion was inconsistent with Plaintiff's ability to return, for a time, to his work as a tractor-trailer truck driver. On May 2, 2013, Plaintiff told his physical therapist that he had a job interview earlier in that week. (PageID.400.) On May 13, 2013, his therapist noted that Plaintiff was beginning a new job. Plaintiff was "feeling pretty good." (PageID.402.) Plaintiff stated that he was able to drive an eighteen wheeler truck with no problems, and that nothing was restricted by his mobility. (PageID.417.) On July 30, 2013, Dr. Andrew Saxe noted that Plaintiff was "back at work as a truck driver." (PageID.469.) Thus, contrary to Plaintiff's assertion that this job lasted only a few weeks (PageID.537), the record demonstrates that Plaintiff was driving a truck for a period of at least two months. This is inconsistent with Dr. McDermott's opinion that Plaintiff would be unable to perform such activities.

Accordingly, the ALJ provided good reasons, supported by substantial evidence, for giving the opinion of Dr. McDermott less than controlling weight. Plaintiff's claim of error is denied.

### 2. The ALJ's Discussion of Dr. McDermott's Opinion Satisfied 20 CFR §§ 404.1527 and 416.927's requirements.

If the ALJ affords less than controlling weight to a treating physician's opinion, the ALJ must still determine the weight to be afforded such. *Gayheart*, 710 F.3d at 375–76. In doing so, the ALJ must consider the following factors: (1) the length of the treatment relationship and frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the treating source; and (6) other relevant factors. *Id.* (citing 20 C.F.R. § 404.1527).

While the ALJ is not required to explicitly discuss each of these factors, the record must nevertheless reflect that the ALJ considered those factors relevant to his assessment. *See, e.g., Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007); *Undheim v. Barnhart*, 214 F. App'x. 448, 450 (5th Cir. 2007).

The Sixth Circuit has interpreted this regulation as establishing a "clear duty" by an ALJ to give "good reasons" for the weight an ALJ assigns to a treating source's opinion. Good reasons are reasons "supported by the evidence in the case record" and "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The purpose of this requirement is "to safeguard the claimant's procedural rights" by "'let[ting] claimants understand the disposition of their cases, particularly in situations where a claimant knows that his physician has deemed him disabled and therefore might be especially bewildered when told by an administrative bureaucracy that [ ]he is not.'" *Id.* (*quoting Wilson*, 378 F.3d at 544).

While Plaintiff would apparently have the ALJ address each factor individually, Plaintiff points to no case law requiring an ALJ to perform such an analysis. Under sections 404.1527(c) and 416.927(c), the ALJ is only required to "consider" the factors. The regulation does not require a "factor-by-factor" analysis. *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804–05 (6th Cir. 2011); *see also Kostovski–Talevska v. Comm'r of Soc. Sec.*, No. 5:13–cv–655, 2014 WL 2213077, at *9 (N.D. Ohio May 28, 2014) (collecting cases); *Mayfield v. Comm'r of Soc. Sec.*, No. 1:12–cv–912, 2014 WL 1341923, at *11 (W.D. Mich. Mar. 31, 2014); *Owens v. Comm'r of Soc. Sec.*, No. 1:12–cv–47, 2013 WL 1304470, at *2 (W.D. Mich. Mar. 28, 2013). The record demonstrates that the ALJ recognized his responsibility under the regulations, noting that he had to consider the opinion evidence in accordance with, among other things, 20 C.F.R. §§ 404.1527 and

404.927(c). (PageID.46.)  The ALJ adequately considered the factors regarding the opinion evidence, and specifically considered the doctor's opinions against the record.  (PageID.49.)  The ALJ found that the proffered restrictions listed in the doctor's opinion were not well supported by objective evidence, and in doing so the ALJ expressly considered several of the factors, including Dr. McDermott's specialization as an orthopedic surgeon, as well as the the consistency and supportability of the opinion.  (PageID.49.)  In this, the Court finds no error.

### 3.     The ALJ Did Not Violate SSR 02-1P in Addressing Plaintiff's Obesity.

Finally, Plaintiff argues that the ALJ failed to properly consider his obesity when determining his RFC. The ALJ recognized that Plaintiff is obese, but considered this a non-severe impairment. (PageID.46.)  It is not clear whether Plaintiff is challenging the ALJ's decision that Plaintiff's obesity does not constitute a severe impairment or arguing that the ALJ's assessment of his obesity is improper.  (PageID.540–43.) This lack of clarity is, ultimately, irrelevant as neither argument is persuasive.

At step two of the sequential analysis articulated above, the ALJ must determine whether the claimant suffers from a severe impairment.  The Sixth Circuit has held that where the ALJ finds the presence of a severe impairment at step two and proceeds to continue through the remaining steps of the analysis, the alleged failure to identify as severe some other impairment constitutes harmless error so long as the ALJ considered the entire medical record in rendering his decision.  *See Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Kirkland v. Comm'r of Soc. Sec.*, 528 F. App'x 425, 427 (6th Cir. 2013) ("so long as the ALJ considers all the individual's impairments, the failure to find additional severe impairments . . . does not constitute reversible error"); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (same);

*Fisk v. Astrue*, 253 F. App'x 580, 583–84 (6th Cir. 2007) (same).

Here, the ALJ determined that Plaintiff suffered from several severe impairments at step two of the sequential analysis and continued with the remaining steps thereof, considering in detail the medical evidence of record. The record does not support the contention that Plaintiff's obesity imposes any limitations which are inconsistent with his RFC. While Plaintiff points to evidence that he was diagnosed as "morbidly obese" by Dr. McDermott (PageID.247), such evidence does nothing to demonstrate that his obesity imposed any additional work-related limitations. Thus, even if it is assumed that the ALJ erred in failing to find that Plaintiff's obesity constituted a severe impairment, such error does not call into question the substantiality of the evidence supporting the ALJ's decision. This argument is, therefore, rejected. *See Shinseki v. Sanders*, 556 U.S. 396, 407 (2009) (recognizing that the harmless error doctrine is intended to prevent reviewing courts from becoming "impregnable citadels of technicality"); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535–36 (6th Cir. 2001) (recognizing that remand to correct an error committed by the ALJ unnecessary where such error was harmless); *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989) ("no principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result"); *Berryhill v. Shalala,* No. 92-5876, 1993 WL 361792, at *7 (6th Cir. Sept.16, 1993) ("the court will remand the case to the agency for further consideration only if 'the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture . . .'").

To the extent that Plaintiff argues that the ALJ failed to comply with SSR 02–1P, 2000 WL 628049 (Sept. 12, 2002), the result is the same. As SSR 02-1P states:

> Obesity is a risk factor that increases an individual's chances of developing impairments in most body systems. It commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body systems. Obesity increases the risk of developing impairments such as type II (so-called adult onset) diabetes mellitus—even in children; gall bladder disease; hypertension; heart disease; peripheral vascular disease; dyslipidemia (abnormal levels of fatty substances in the blood); stroke; osteoarthritis; and sleep apnea. It is associated with endometrial, breast, prostate, and colon cancers, and other physical impairments. Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity or slowed reactions that may result from obesity-related sleep apnea.

SSR 02–01P, 2000 WL 628049, at *3. In addition, the ruling notes that at step three of the five-step disability analysis, the Commissioner will:

> find that an individual with obesity "meets" the requirements of a listing if he or she has another impairment that, by itself, meets the requirements of a listing. We will also find that a listing is met if there is an impairment that, in combination with obesity, meets the requirements of a listing. For example, obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing.
>
> * * *
>
> We will also find equivalence if an individual has multiple impairments, including obesity, no one of which meets or equals the requirements of a listing, but the combination of impairments is equivalent in severity to a listed impairment.

*Id.* at *5. But the ruling then cautions, "[h]owever, we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. We will evaluate each case based on the information in the case record." *Id.* at *6. In other words, the ruling does nothing to relieve Plaintiff of the burden of marshaling competent

medical opinions and evidence to show specifically how his obesity exacerbated his other impairments, or interacted with them, to render him incapable of all suitable work. Plaintiff had the burden of showing specifically how his obesity, in combination with other impairments, limited his ability to a degree inconsistent with the ALJ's RFC determination. Plaintiff fails to meet that burden.

Moreover, as the Sixth Circuit has made clear, SSR 02–1P "does not mandate a particular mode of analysis, but merely directs an ALJ to consider the claimant's obesity, in combination with other impairments, at all stages of the sequential evaluation." *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x. 574, 577 (6th Cir. 2009) (citation omitted); *see also Bledsoe v. Barnhart*, 165 F. App'x 408, 412 (6th Cir. 2006) ("[i]t is a mischaracterization to suggest that Social Security Ruling 02–01p offers any particular procedural mode of analysis for obese disability claimants"). The ALJ recognized that Plaintiff is obese and analyzed the entire record in assessing Plaintiff's residual functional capacity. The ALJ's RFC determination sufficiently accounts for Plaintiff's obesity and the limitations reasonably imposed by such. This argument is, therefore, rejected.

## CONCLUSION

For the reasons articulated herein, the Commissioner's decision will be **AFFIRMED.** A separate judgment shall issue.


Dated: July 11, 2016                    /s/ Robert Holmes Bell
                                        ROBERT HOLMES BELL
                                        UNITED STATES DISTRICT JUDGE